STATE OF NEBRASKA, EX REL. SCHOOL DISTRICT OF CITY OF LINCOLN, RELATOR, APPELLEE, V. MARTIN I. AITKEN, TREASURER OF THE CITY OF LINCOLN, RESPONDENT, APPELLANT.

FILED MARCH 6, 1901. No. 11,874.

1. **Payment of Occupation Tax Not Condition Precedent to Conduct of Business.** The payment of an occupation tax can not be made a condition precedent to obtaining a license to conduct the business sought to be taxed.

2. **Money Paid on Condition of Obtaining License is Not Tax Under Statute.** Where money is collected or paid as a condition of obtaining a license, it is license money, and not a tax, under the provisions of section 5, article 8, of the constitution.

APPEAL from the district court for Lancaster county. Heard below before FROST, J. *Affirmed.* SULLIVAN J., dissenting.

*E. C. Strode* and *D. J. Flaherty,* for appellant.

*B. F. Johnson,* contra.

HOLCOMB, J.

From a judgment directing the issuance of a peremptory writ of mandamus, requiring the respondent, as city treasurer, to place to the credit of the relator and

pay into its funds certain moneys then held by the respondent which were claimed by relator under the provisions of section 5, article 8, of the constitution, an appeal is taken to this court, and we are asked to reverse the judgment of the trial court allowing the writ. No question arises as to the right of the city to levy an occupation tax.

The controversy involves the right of the city to retain the moneys mentioned as belonging to the city treasury as funds derived from the levy and collection of an occupation or business tax as against the school district, which claims the same under the provisions of the section of the constitution referred to. Omitting that which is inapplicable to the present controversy the section reads as follows: "All fines, penalties and license moneys arising under the rules, by-laws, or ordinance of cities * * * shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of common schools in the respective subdivisions where the same may accrue." Constitution, art. 8, sec. 5. The ordinance of the city, under which the moneys in controversy were collected and paid into the city treasury, is entitled "An ordinance to regulate, license and impose an occupation tax * * * and prescribing penalties for violation of the provisions thereof." By section 1 it is provided: "It shall be unlawful for any person or persons or associations to exercise, engage in or conduct any of the following occupations in the City of Lincoln, Nebraska, without first having paid the occupation tax hereinafter provided, and the license fee therefor; *it is hereby expressly provided, however, that the granting of the license provided in this ordinance is not conditioned upon the prepayment of the occupation tax herein provided, and it is expressly provided that the occupation tax may be paid and a receipt given therefor without the payment of the license fee, and the license fee may be paid and the license issued without the prepayment of the occupation tax.*"

The section quoted as originally enacted did not contain the portion italicized. The amendment. made subsequent to its passage, with some others, and all of the same general character, was evidently intended in the same ordinance to provide for the collection of a small sum of money as a liccⵏse fee, and at the same time a larger sum, denominated an occupation tax, the disposition of which latter tax would not be controlled by the provisions of the constitution quoted, but left in the city treasury for the use of the city in meeting its current expenditures. From an examination of the entire ordinance, and a consideration of its scope and character, legal effect and the results accomplished thereby, we can only regard the amendment placed in the original section as the mere *ipse dixit* of the city council, in an attempt, under the guise of collecting an occupation tax, in truth and in fact to invoke the power of the law for licensing different trades, occupations and businesses and collecting a license fee therefor. The fact that it is stated that one sum is a license fee and the other an occupation tax, and that each is independent of the other, does not, we think, have the effect that a literal application of the language used would produce. In view of the entire ordinance, and the method of collecting these disputed funds, it appears quite clear that they are interdependent and inseparably connected. To obtain a license under the ordinance the occupation tax is required to be paid, and to obtain a receipt for the occupation tax the license fee must also be forthcoming. This is the spirit and essence of the entire ordinance, as we construe it. To illustrate further: By section 2, under the subhead "amusements," it is specifically provided that "no person, or persons, within the limits of the city, shall give any of the entertainments mentioned in this chapter, for gain, without first having paid the occupation tax and license fee for that purpose," etc. Subdivision "*a*" of the same section provides, "Each license shall express for what it is granted, and the time it is

to continue, and the following *occupation tax and license fee* shall be respectively imposed, as aforesaid, and paid to the city treasurer before the issuing of the receipt for the occupation tax or the granting of the license upon the payment of the license fee."

By section 6, wherein the clerk is made the judge of the class to which the applicant belongs, it is provided: "And the person or persons to whom the license may be granted, shall pay the occupation tax and license fee herein fixed for such license."

Paragraph 23 of section 767 declares: "There shall be charged and paid to the city treasurer for the use of the city, on the issuing of said licenses, by the parties to whom they are granted, the following sums as a license fee; *and, also,* there shall be charged and paid into the city treasury for the use of the city on the issuing of a receipt for the occupation tax, the following sums as an occupation tax."

In subdivision *"a,"* paragraph 4 of section 1173, it is provided, in substance, that applicants for a license shall first pay to the city treasurer a license fee, whereupon a license shall be issued; "and in addition thereto," the said applicant shall pay an occupation tax, whereupon the city treasurer shall issue a receipt showing payment of the same.

Section 34, containing the penalty clause, declares that any person who shall violate any of the provisions of the ordinance or duties by it imposed shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in an amount therein stated. This section would be void and of no force as to the collection of an occupation tax (*Magneau v. City of Fremont*, 30 Nebr., 843), and yet, as a penalty for doing business without a license, it is operative. It is doubtless operative, as it was intended to be, in the collection of the taxes denominated both a license fee and an occupation tax, and gives additional emphasis to contention of relator, that the occupation tax as well as the license fee was required to be paid as a precedent condition to obtaining a license.

It is quite evident from a perusal of the ordinance in its entirety, that while there is an attempt to give it a dual character, one providing for licensing the business mentioned, and the other for the levy and collection of an occupation tax, the right to engage in the business and obtain a license therefor is dependent, not only on the payment of the license fee, but the occupation tax as well.

By the stipulation of the parties as to the facts in the case it is agreed that the city treasurer collected both the amounts, denominated an occupation tax and a license fee, at the same time. The only rational conclusion to be drawn is that the payments were made because of the provisions of the ordinance requiring the party engaging in the business taxed to obtain a license therefor before engaging in the business. This makes the payments, whatever they are called, essentially and in fact license money, to be disposed of in the manner provided by the constitution. It was the requirement of the ordinance licensing the business and providing for the payment of a license fee, and, in addition thereto, the collection of what is termed an occupation tax, that brought the funds in controversy into the city treasury and produced the result leading to this litigation. In *State v. Bennett*, 19 Nebr., 191, it is held quite positively that the payment of an occupation or business tax can not be made a condition precedent to sell intoxicating liquors. And in *State v. Wilcox*, 17 Nebr., 219, it is said that where a tax is collected or paid as a condition of obtaining a license, it is license money and not a tax under the provisions of the constitution quoted. Says MAXWELL, J., in speaking of that case: "No part of this sum is obtained as a tax, but as a condition of obtaining the license. The $1,000 is paid as a whole for the license—not a part for license and a part as tax, because without the payment of the entire sum the license would not be issued." We think the case at bar comes entirely within the rule announced in the case last mentioned.

Said the trial court, who awarded the writ in this case: "The question presented therefore by the record in this case is not whether the city through its council has authority to impose by ordinance an occupation tax upon certain dealers, but whether or not the council has authority to impose by ordinance an occupation tax as a condition precedent to the issuing of a license. The ordinance so adroitly drawn in controversy in this case clearly makes the payment of such occupation tax a condition precedent to the issuing of the license, and the issuing of a license a condition precedent to the payment of an occupation tax. In other words, by the terms of the ordinance, one can not procure a license without paying the occupation tax, or pay an occupation tax without procuring the license. The payment of the tax is a condition of the obtaining of the license, 'not a part for license and a part as tax, because without the payment of the entire sum the license would not be issued.'"

With the views thus expressed we are in entire accord, and for the reasons stated must hold that the writ was rightly issued. The judgment is accordingly

AFFIRMED.

SULLIVAN, J., dissenting.

I do not concur in the judgment. I think the fund in controversy came into the hands of respondent as the result of an exercise of the taxing power by the city authorities, and not as the result of an attempt to regulate and license occupations. It seems to me that the opinion gives too much importance to matters of form and too little to matters of substance.